

**SIGNED this 17 day of March, 2010.**

_____
**Marcia Phillips Parsons
UNITED STATES BANKRUPTCY JUDGE**

[This opinion is not intended for publication as the precedential effect is deemed limited.]

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re<br><br>WILLIAM RICHARD THIELE and<br>PATRICIA HARRIS THIELE,<br><br>        Debtors. | No. 09-51682<br>Chapter 11 |
| W.J. & JANET FONTENOT<br><br>        Plaintiffs,<br><br>vs.<br><br>WILLIAM RICHARD THIELE,<br><br>        Defendant. | Adv. Proc. No. 09-5080 |

### M E M O R A N D U M

APPEARANCES:

| | |
|---|---|
| Jerry R. Givens, Esq.<br>Ambrose, Wilson, Grimm & Durand<br>Post Office Box 2466<br>Knoxville, Tennessee 37901-2466<br>*Attorney for W.J. and Janet Fontenot* | Edward J. Shultz, Esq.<br>Ayres & Parkey<br>Post Office Box 23380<br>Knoxville, Tennessee 37933<br>*Attorney for William Richard Thiele* |

**Marcia Phillips Parsons, United States Bankruptcy Judge**. In this adversary proceeding, the plaintiffs seek a determination of nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), (a)(4), (a)(6), and (a)(19), based on their assertion that the defendant fraudulently induced their investment in a pyramid scheme. Presently before the court is the defendant's motion to dismiss for failure to state a claim for relief as to all Bankruptcy Code sections but § 523(a)(6). Also before the court is the plaintiffs' response in opposition and, in the alternative, to amend their complaint. For the reasons discussed hereafter, the defendant's motion to dismiss will be granted, and the plaintiffs' motion to amend denied. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

I.

On June 19, 2009, William Richard Thiele and his wife Patricia Harris Thiele filed a voluntary petition for bankruptcy relief under chapter 11. Subsequently, on September 29, 2009, W.J. and Janet Fontenot commenced this adversary proceeding against Mr. Thiele.

In their complaint, the Fontenots allege that Thiele, the managing director of Harris Financial Group, LLC., gave a presentation to Mr. Fontenot on or about March 30, 2006, regarding investing in Harris Financial's Variable Rate Note Program. Following the meeting, Thiele sent a letter dated March 31, 2006, to Mr. Fontenot with an accompanying subscription agreement that provided for a one-year note in the amount of $50,000 bearing interest at 15% per annum. Thiele stated in the letter that he would send the executed note with his personal guaranty upon receipt of the executed subscription agreement and Fontenots' check for $50,000. Thiele also stated in the letter that:

> This note will be repaid as soon as we complete the purchase of Regional Management Corp., the consumer finance company I told you about. We expect this to happen in about 60 days. In the meantime if you need to [sic] your money back sooner we will be glad to do this on 21 days notice.

On or about April 3, 2006, the Fontenots executed the subscription agreement and returned it along with their $50,000 check to Thiele. He then sent them a Variable Term Promissory Note dated April 4, 2006, providing that Harris Financial would repay the $50,000 to the Fontenots on April 4, 2007. The note bore interest at the rate of 15% payable on the fifteenth day of each month and was signed by Thiele, as managing director of Harris Financial and personally to evidence his guaranty. Copies of the executed note, subscription agreement, and March 31, 2006 letter are

attached to the complaint.

The complaint recites that Harris Financial made the monthly interest payments through March 2007, and that on January 30, 2007, the Fontenots advised Thiele that they wished to redeem the note upon its maturity on April 4, 2007. In an email communication to the Fontenots on May 7, 2007, Thiele stated that they would be fully repaid in mid-June when a new investor bought one-half of Harris Financial and that in the meantime he would send them $5,000 per week. On June 10, 2007, Mr. Fontenot emailed Thiele inquiring about the status of the weekly payments since none had been received. Thiele responded in a email that same day that the business' refinancing was going well, with closing expected by June 25 when the Fontenots would be paid in full. Thiele did not directly respond to the inquiry about the weekly payments other than to say that "cash flow remains very tight" and that interests checks for April and May would be sent later in the week. These email communications are attached to the complaint.

The Fontenots allege that in subsequent email communications on June 25, 2007, and July 2, 2007, Thiele similarly promised to recommence interest checks, with the earlier communication also reciting that closing was expected the second week of July. The complaint alleges that, notwithstanding these representations, interest payments never resumed and the Fontenots were never repaid their $50,000 investment. According to the Fontenots, Thiele continued to make repayment promises even after his June 19, 2009 bankruptcy filing. In an email to Mr. Fontenot, Thiele said that he and his wife remain "committed to doing whatever is necessary to pay you and our other creditors as quickly as possible."[1]

The complaint recites that because of the foregoing, the $50,000 debt owed by Thiele pursuant to his personal guaranty is excepted from discharge under 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), (a)(4), (a)(6), and (a)(19). Specifically, as to § 523(a)(2)(A), which pertains generally to debts obtained by fraud, the Fontenots further allege that Thiele represented an investment

---

[1] The June 25, 2007 email is attached to the complaint as Exhibit 7. The complaint recites that the July 2, 2007 email is attached as Exhibit 8, but Exhibit 8 is a June 24, 2009 email, wherein Thiele advises of his personal bankruptcy filing and of his commitment to pay the Fontenots and other creditors. The complaint identifies this email as Exhibit 9 but no Exhibit 9 is attached.

3

opportunity, that the representations were known by him to be false, as "in truth the investment opportunity was a pyramid scheme," that the Fontenots were ignorant of the falsity, and that they justifiably relied upon the false representations.  Regarding § 523(a)(2)(B), which concerns debts obtained by the use of fraudulent financial statements, the Fontenots allege that Thiele presented documentation and made statements indicating that Harris Financial was in such strong financial condition that the Fontenots could have their $50,000 investment returned upon demand, but that these documents and statements were intentionally false.  With respect to § 523(a)(4), which includes debts for fraud "while acting in a fiduciary capacity," the Fontenots allege that by accepting $50,000 from them Thiele became their fiduciary.  As to § 523(a)(6), which excepts from discharge debts for "willful and malicious injury," the Fontenots allege that the Thiele converted their money.  Lastly, regarding § 523(a)(19), which pertains to debts resulting from a violation of state or federal securities law or common law fraud in connection with the sale of a security, the Fontenots allege that Thiele's actions constitute a violation of Tennessee securities laws, specifically Tenn. Code Ann. 48-2-121.

In his motion to dismiss filed January 7, 2010, Thiele seeks dismissal of all causes of action except § 523(a)(6) for failure to state a claim upon which relief can be granted.   In response, the Fontenots deny that their complaint fails to set forth proper claims for relief.  Alternatively, the Fontenots request leave to amend their complaint if the court finds the complaint lacking on its face.

II.

Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012(b) provide that a complaint may be dismissed for failure to state a claim upon which relief can be granted.  As explained by the United States Supreme Court:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal,* \_\_\_ U.S. \_\_\_, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). Moreover, "'a legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). The court will examine each of the claims for relief set forth in the complaint, other than 11 U.S.C. § 523(a)(6), and determine if the required plausibility standard is met.

### III.

The first basis for nondischargeability is § 523(a)(2) of the Bankruptcy Code, which provides in pertinent part:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–
>
> . . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
> >
> > (B) use of a statement in writing–
> >
> > > (i) that is materially false;
> > >
> > > (ii) respecting the debtor's or an insider's financial condition;
> > >
> > > (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> > >
> > > (iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. § 523(a)(2). To except a debt from discharge under subsection (a)(2)(A) of this provision, which addresses liabilities for money "obtained by . . . false pretenses, a false representation, or actual fraud . . . ," a creditor must prove the following four elements: "(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss." *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 280-81 (6th Cir. 1998).

5

In his motion to dismiss, Thiele initially argues that the first element of § 523(2)(A) can not be met because he did not personally "obtain" any money, since the Fontenots loaned the money to Harris Financial, a separate legal entity. The Sixth Circuit Court of Appeals has explained, however, that § 523(a)(2) is not limited to situations where the debtor personally and directly benefitted from the fraud and that even an indirect, intangible benefit to the debtor may constitute "obtaining property" within the meaning of the statute. *See Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172 (6th Cir. 1996) ("We . . . reject debtor's implication that a debt is nondischargeable under section 523(a)(2)(A) only when the creditor proves that the debtor directly and personally received every dollar lost by the creditor."). In *Brady*, the court of appeals affirmed the bankruptcy court's nondischargeability determination under § 523(a)(2), where the debtor made the misrepresentation and controlled and was the president of the corporation receiving the monies. *Id.* (citing, *inter alia*, *Bates v. Winfree (In re Winfree)*, 34 B.R. 879, 883 (Bankr. M.D. Tenn. 1983) (shareholder, officer, and director of a corporation who fraudulently induces a loan to the corporation obtains a benefit under § 523(a)(2)(A)).

Next, Thiele argues that the complaint fails to set forth the false representations made by him that induced the Fontenots' investment. He points out that the only representations he is alleged to have made at the time of the investment were those set forth in the March 31, 2006 letter that the note would be repaid when Harris Financial completed its purchase of Regional Management Corporation, which was expected to happen in 60 days, and that the Fontenots could have their money back sooner on 21 days notice. Thiele asserts that neither of these statements can provide a basis for fraud because they were merely representations of future performance rather than of current fact. Additionally, Thiele asserts that his subsequent promises to repay the Fontenots are not relevant because they occurred after the investment and, consequently, could not have been relied upon by the Fontenots when they made their investment decision.

Thiele is correct that § 523(a)(2)(A) requires as a general rule that "the creditor 'must demonstrate that the representation was one of existing fact and not merely an opinion, expectation or declaration of intention. A mere promise to repay, and nothing more, does not rise to the level of representation under § 523(a)(2).'" *Williams v. White (In re White)*, 412 B.R. 860, 866 (Bankr. W.D. Va. 2009) (citation omitted). The exception to this rule is "if a complainant could prove that

6

a debtor made knowingly false promises of future performance with the intent to defraud." *Bohannon v. Horton (In re Horton)*, 372 B.R. 349, 357 n.8 (Bankr. W.D. Ky. 2007).

With respect to Thiele's representations in the March 31, 2006 letter, the complaint sets forth no additional facts from which one could reasonably infer that Thiele knowingly lied when he said that the Fontenots would be repaid when Harris Financial completed its anticipated purchase or sooner upon 21 days notice or that Thiele acted with "gross recklessness" as to the truth of these statements. The only additional allegation in this regard, besides the mere fact of nonpayment, is the assertion that the purported investment opportunity was in reality a pyramid scheme. However, this conclusion is not amplified in any respect. No explanation is given to how Harris Financial's Variable Rate Note Program operated as an pyramid scheme or was otherwise inherently fraudulent rather than a true investment. As noted by the Ninth Circuit Court of Appeals, a conclusory allegation about the existence of a pyramid scheme is "insufficient to satisfy the requirement for particularity in pleading fraud claims under federal and state law." *Miron v. Herbalife Int'l. Inc.*, 11 F. App'x. 927, (9th Cir. 2001). Although the court must presume all factual allegations to be true, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932 (1986) (internal quotations omitted)).

Reviewed in its entirety, the complaint lacks the factual specificity from which this court can draw the reasonable inference that all of the elements of § 523(a)(2)(A) are present. To the contrary, the complaint merely sets forth the conclusory, and legally insufficient, allegations that the investment was fraudulent and the representations of repayment knowingly false. Moreover, Thiele's promises of repayment which took place after the Fontenots' investment may not provide the basis for nondischargeability under § 523(a)(2)(A) because they were not relied upon by the Fontenots when they made their investment decision. *See Burbank v. Capelli (In re Capelli)*, 261 B.R. 81, 88 (Bankr. D. Conn. 2001) ("Misrepresentations that are subsequent to the creation of the debt 'have no effect upon the dischargeability of a debt, since the false representation could not have been the creditor's reason for the extension of credit.'" (citation omitted)). Based on all of the foregoing, the court concludes that the complaint fails to state a claim for relief under §

7

523(a)(2)(A).

The Fontenots' second cause of action is based on § 523(a)(2)(B). Under this subsection, a creditor must establish "that the debt was obtained by the use of a statement (1) in writing; (2) that was materially false; (3) respecting the debtor's or an insider's financial condition; (4) on which the creditor to whom the debtor is liable for money, property, services or credit reasonably relied; that the debtor caused to be made or published with intent to deceive." *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 780 (Bankr. E.D. Tenn. 2003). Because subsection (B) of § 523(a)(2) covers only written statements "respecting a debtor's financial condition" and subsection (A) expressly excludes such statements, the subsections are expressly mutually exclusive. *Id.* at 759. Consequently, oral statements regarding the financial condition of the debtor are not actionable under either subsection (A) or (B). *See Prim Capital Corp. v. May (In re May)*, 368 B.R. 85, 2007 WL 2052185, *5 (B.A.P. 6th Cir. 2007) (table opin.) ("A debt based on an oral misrepresentation of financial condition is not actionable and will be dischargeable.")

With respect to their § 523(a)(2)(B) claim, the Fontenots allege in their complaint that Thiele presented documentation which showed Harris Financial to be in "strong financial standing" in the course of negotiating with them. More specifically, the complaint states that "according to the documents and statements by [Thiele], the companies were in such good standing that the Plaintiffs would have their $50,000 investment returned to them upon notice that they wanted the money returned almost immediately." The Fontenots allege that these documents and statements were intentionally false and were relied upon by them in making their investment.

To the extent the Fontenots are alleging that Thiele made oral representations regarding the financial condition of Harris Financial, such representations may not form a basis for nondischargeability under § 523(a)(2)(B) as previously noted. With respect to the written documentation alleged to have been presented by Thiele, the complaint does little more than recite the elements of a § 523(a)(2)(B) cause of action. The documents are not attached to the complaint or otherwise identified. Further, the alleged falsity in the documents is not specified. The complaint's general assertion that the representation that Harris Financial was "in strong financial standing" was false is unsupported by any factual content and is merely a "legal conclusion couched

8

as a factual allegation." Accordingly, the complaint fails to set forth a claim for relief under § 523(a)(2)(B) that is plausible on its face.

The Fontenots' third basis for nondischargeability is § 523(a)(4), which provides in pertinent part that "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny[.]" 11 U.S.C. § 523(a)(4). In their complaint, the Fontenots allege that "[o]nce [Thiele] accepted the $50,000 investment from the Plaintiffs with the promise to pay 15% interest and return the corpus upon notice, he became a fiduciary of the Plaintiffs" and that "[h]is continued promises to return the money . . . constitute fraud . . . ." In his motion to dismiss, Thiele asserts that "fiduciary" within the context of § 523(a)(4) is limited to pre-existing fiduciary relationships arising out of express or technical trusts and, therefore, is inapplicable to the case at hand.

Thiele is correct. The Sixth Circuit Court of Appeals has explained that § 523(a)(4) requires proof of three elements: (1) a pre-existing fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss. *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005). Fiduciary relationship is construed more narrowly for purposes of § 523(a)(4) than in other circumstances. *Id.* at 391. The mere failure to meet an obligation while acting in a fiduciary capacity is insufficient. *R.E. Am., Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997). Rather, the requisite "fiduciary relationship turn[s] on the existence of a pre-existing express or technical trust whose res encompasses the property at issue." *In re Blaszak*, 397 F.3d at 391.

> Under Tennessee law, an express trust is created by the direct and positive acts of the parties, by some writing, deed, or will; or by the action of a court in the exercise of its authority. At a minimum, there must be a grantor or settlor who intends to create a trust; a corpus (the subject property); a trustee; and a beneficiary. A technical trust is defined as an obligation arising out of a confidence reposed in a person to whom the legal title of property is conveyed, that he will faithfully apply the property according to the wishes of the creator of the trust.

*Houghton v. Lusk*, 308 B.R. 304, 310 (Bankr. E.D. Tenn. 2004) (citations omitted).

Applying these standards to the present case, there are no factual allegations in the complaint that would support the existence of either a technical or express trust at the time the Fontenots made

9

their investment in Harris Financial. In apparent recognition of this deficiency, the Fontenots assert in their response to Thiele's motion to dismiss that they plan to show through discovery that Thiele was the sole stockholder of, and fully controlled Harris Financial such that the corporate veil would be pierced. However, even if true, this fact would be insufficient to establish the requisite financial relationship required by § 523(a)(4). Piercing the corporate veil would only mean that a debtor/creditor relationship was established directly between Thiele and the Fontenots. "The relationship of debtor and creditor without more is not a fiduciary relationship" within the meaning of § 523(a)(4). *Sallee v. Fort Knox Nat'l Bank (In re Sallee*, 286 F.3d 878, 894 (6th Cir. 2002). Accordingly, the complaint fails to set forth a claim for relief under § 523(a)(4) of the Bankruptcy Code.

The Fontenots further allege that the debt owed them by Thiele is nondischargeable under § 523(a)(19), which provides, in applicable part:

>   (a) A discharge under 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
>   >   (19) that–
>   >   >   (A) is for–
>   >   >   >   (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
>   >   >
>   >   >   >   (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
>   >   >
>   >   >   (B) results, before, on, or after the date on which the petition was filed, from–
>   >   >   >   (i) any judgment order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
>   >   >
>   >   >   >   (ii) any settlement agreement entered by the debtor; or
>   >   >
>   >   >   >   (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

Essentially, this statute excepts from discharge a debt for which two conditions are met.

First, the debt must be for a violation of statutory securities laws or for common law fraud in connection with the purchase or sale of a security. Secondly, the debt must result from a judicial or administrative order or a settlement agreement. *Faris v. Jafari (In re Jafari)*, 401 B.R. 494, 496 (Bankr. D. Col. 2009).

In his motion to dismiss, Thiele argues that neither of these requirements is satisfied in this instance. He states that there is no court judgment or decree, settlement agreement, or an administrative order for damages evidencing the debt as required by the statute. Thiele also asserts that the facts alleged by the Fontenots do not show a violation of the securities laws because no purchase or sale of a security occurred. Thiele admits that the note issued by Harris Financial satisfies the definition of a security in the Bankruptcy Code, see 11 U.S.C. § 101(49), but argues that the transaction was a loan, rather than the sale of a security, and that he was merely the guarantor of the loan.

> The complaint sets forth the following regarding relief under § 523(a)(19):
>
> The Defendant created an investment scheme whereby he sold unregistered securities to the Plaintiffs while representing to them that the companies were in strong financial condition and guaranteeing not only 15% return but that the Note was *payable on demand*, knowing all along that the companies were not in strong financial condition and that the Note could not be paid upon demand. This constitutes a violation of T.C.A. § 48-2-121 and therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(19).

Turning first to the necessity that the debt result from an order or settlement agreement, there is not indication in the complaint that the debt owed by Thiele to the Fontenots results from an order or settlement agreement. In response to Thiele's motion to dismiss on this issue, the Fontenots point out that § 523(a)(19) expressly provides that such an order can result "before, on, or after the date on which the petition was filed." The Fontenots maintain that in light of this language, this court can make a determination that there has been a violation of state securities law and enter an order of nondischargeability.

An order of nondischargeability by this court, however, will not cure the complaint's deficiency. Section 523(a)(19) requires that the debt "result" from a judicial or administrative order or settlement agreement. An order by this court of nondischargeability is a determination that a

11

debt, already in existence, is excepted from discharge; the debt does not "result" from the dischargeability determination.  Granted, in this circuit, a bankruptcy court may also enter a money judgment for damages in connection with a request for a determination of nondischargeability.  *See Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 966 (6th Cir. 1993).  Yet, the Fontenots do not specifically request in their complaint that the court award them damages for Thiele's alleged violation of Tenn. Code Ann. § 48-2-121.  Rather, the Fontenots seek only a determination of nondischargeability and an award of attorney fees, interest, and costs.  While the prayer for relief also seeks "any further relief as this Court shall deem appropriate," this generic request for general relief is insufficient to satisfy the necessary element of § 523(a)(19) that the debt "result" from an order or settlement agreement.  Accordingly, because the Fontenots do not expressly seek an order from this court awarding them damages for Thiele's alleged violation of statutory or common law securities fraud,[2] and no such order or agreement recognizing such a debt is otherwise alleged, this court is unable to conclude that a claim for relief under § 523(a)(19) has been stated in the complaint.[3]

---

[2] Courts disagree on the issue of whether a bankruptcy court, in connection with a dischargeability determination under § 523(a)(19), may enter an order adjudging a violation of statutory securities laws or common law securities fraud and awarding judgment, thereby satisfying both required components of § 523(a)(19).  *Compare In re Jafari*, 401 B.R. at 496 (securities fraud debt must be memorialized in order or settlement agreement outside the bankruptcy case); *Holland v. Zimmerman (In re Zimmerman)*, 341 B.R. 77, 80 (Bankr. N.D. Ga. 2006) ("Section 523(a)(19) expressly contemplates a post-petition determination of liability by a nonbankruptcy forum . . . ."); with *In re Chan*, 355 B.R. 494, 504 (Bankr. E.D. Penn. 2006) (disagreeing with *Zimmerman*); *Filian v. Jansma (In re Jansma)*, No. 09 AP 00444, 2010 WL 282511, *5 (Bankr. N.D. Ill. Jan. 21, 2010) (bankruptcy court can conduct federal judicial proceeding and issue order for damages under § 523(a)(19)(B)).  The memoranda filed by the parties in this adversary proceeding do not address this disagreement.  Because the Fontenots have not expressly sought an order that would arguably satisfy the prerequisites of § 523(a)(19), it is unnecessary for this court to decide whether the bankruptcy court may enter such an order in the context of a dischargeability determination.

[3] In light of this conclusion, the court need not address Thiele's argument that the facts alleged in the complaint do not indicate a violation of the state securities laws, namely Tenn. Code Ann. § 48-2-121(a), because the transaction was a loan rather than sale of a security and Thiele was merely a guarantor of the loan.  The court does note in this regard, however, that the definition of "security" in Tenn. Code Ann. § 48-2-102(12) includes a "note," and that the subscription agreement executed by the Fontenots and attached to the complaint provides that the Fontenots are agreeing
(continued...)

IV.

Lastly, the court turns to the Fontenots' amendment request. In their brief in response to Thiele's motion to dismiss, the Fontenots state "if the court finds that the Plaintiff's Complaint is lacking of facts to support their requested relief the Plaintiffs respectfully move this court to not dismiss the complaint but allow the Plaintiffs to amend the Complaint pursuant to Federal Rule of Civil Procedure 15a.

Rule 15(a) of the Federal Rules of Civil Procedure, which applies to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7015, states as follows:

> **(a) Amendments Before Trial**.
>
>> **(1) Amending as a Matter of Course**. A party may amend its pleading once as a matter of course within:
>>
>>> **(A)** 21 days after serving it, or
>>>
>>> **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>>
>> **(2) Other Amendments**. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.
>>
>> **(3) Time to Respond**. Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

As provided in Rule 15(a)(1), the Fontenots had 21 days after they filed their complaint and another 21 days after Thiele filed his motion to dismiss under Rule 12(b)(6) in which to file an amended complaint as a matter of course. The Fontenots chose not to file an amended complaint within these time periods and thus must now proceed under Rule 15(a)(2), which allows amendment only with the consent of Thiele or upon leave of court. When such leave is sought, the local rules

---

[3](...continued)
to "purchase" Harris Financial's Variable Term Promissory Note. Moreover, liability for a violation of Tenn. Code Ann. § 48-2-121(a) is not limited to the seller but may include "[e]very person who directly or indirectly controls" an entity otherwise liable. *See* Tenn. Code Ann. 48-2-122(g).

of this court require that "[a] party who moves to amend a pleading in an adversary proceeding must attach a copy of the proposed amended pleading as an exhibit to the motion." *See* E.D. Tenn. LBR 7015-1. The Fontenots did not attach to their request to amend a copy of a proposed amended complaint and there is no indication either in their response or in their brief what additional facts they would allege if given the opportunity.

It has been observed that "a bare request in an opposition to a motion to dismiss–without any indication of the particular grounds on which amendment is sought–does not constitute a motion with the contemplation of Rule 15(a)." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004) (citation omitted) (quoting *Confederate Mem'l Ass'n v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)). As explained by the Sixth Circuit Court of Appeals in affirming a dismissal of a complaint without granting the plaintiffs' unadorned request to amend:

> Had the plaintiffs filed a motion to amend the complaint prior to the Court's consideration of the motions to dismiss and accompanied that motion with a memorandum identifying the proposed amendments, the Court would have considered the motions to dismiss in light of the proposed amendments to the complaint. Absent such a motion, however, Defendant was entitled to a review of the complaint as filed pursuant to Rule 12(b)(6). Plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies.

*Id.* (quoting *Begala v. PNC Bank Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000). This court agrees with this analysis and believes it is especially applicable to the case at hand. Accordingly, Fontenots' request to amend will be denied.

V.

Based on the foregoing, an order will be entered granting Thiele's motion to dismiss and denying the Fontenots' request to amend. All claims for relief in the complaint will be dismissed with the exception of 11 U.S.C. § 523(a)(6).

# # #